J. Greg Coulter (State Bar No. 016890)
Allan S. Rubin (Pro Hac Vice)
**JACKSON LEWIS P.C.**
2111 East Highland Avenue
Suite B-250
Phoenix, AZ  85016
Telephone: (602) 714-7044
Facsimile: (602) 714-7045
Greg.Coulter@jacksonlewis.com
Allan.Rubin@jacksonlewis.com

John Doran (State Bar No. 012112)
Craig Morgan (State Bar No. 023373)
**SHERMAN & HOWARD LLC**
2555 E. Camelback Road, Suite 1050
Phoenix, AZ 85016
Telephone: (602) 240-3000
jdoran@shermanhoward.com
cmorgan@shermanhoward.com
Attorneys for Defendant, Rocket Mortgage, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **Rachael Gilburd,** an Arizona Resident; **Andrew Gebhart,** an Arizona Resident**; Daniel Featherstone**, an Arizona Resident; **Derek Martin**, an Arizona Resident; **Angela McGuire**, an Arizona Resident; **Kori Morin**, an Arizona Resident, **Katherine Redas**, an Arizona Resident, **Erin Salava**, an Arizona Resident; **David Vallejo**, a Michigan Resident; and **Nick Vincent**, an Arizona Resident, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiffs,<br><br>v.<br><br>**Rocket Mortgage, LLC,** a Michigan limited liability company,<br><br>      Defendant. | Case No:  2:23-cv-00010-DLR<br><br>**RULE 12(B)(2) MOTION TO DISMISS OR TRANSFER PLAINTIFFS' FIRST AMENDED COLLECTIVE ACTION COMPLAINT** |

# INTRODUCTION

Rocket Mortgage, LLC ("Rocket Mortgage") moves to dismiss Plaintiffs' collective allegations as to non-Arizona putative collective members under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Alternatively, Rocket Mortgage moves to transfer this matter under 28 U.S.C. § 1631 and/or 29 U.S.C. §1404 to the Eastern District of Michigan.

This is a putative collective action brought under Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA"). Plaintiffs purport to assert claims on behalf of "[a]ll persons who work[ed] for Defendant Rocket Mortgage, LLC … as a mortgage banker or similar title …" (ECF 26, Am. Compl. ¶80.) Rocket Mortgage, however, is a Michigan company with its principal place of business in Detroit. Rocket Mortgage is not "at home" in Arizona and none of the conduct arises out of Rocket Mortgage's conduct in Arizona. Thus, Plaintiffs cannot establish that the FLSA collective claims of non-Arizona employees are connected to Arizona. Accordingly, this Court lacks both general and specific jurisdiction over non-Arizona collective members' claims and the claims asserted on behalf of non-Arizona putative collective members should be dismissed.[1]

Nonetheless, if this Court declines to dismiss the clams of non-Arizona putative collective members, it should transfer the case to the Eastern District of Michigan under §1631. Transfer under §1631 is proper because Michigan has both subject matter and personal jurisdiction over Rocket Mortgage, and transferring would save time and resources because Michigan unquestionably has the authority to hear the claims of the non-Arizona and Arizona opt-in plaintiffs. Transfer also decreases the risk of filing a

---

[1] This is not a hypothetical. As of February 27, of the 69 Plaintiffs and opt-in Plaintiffs who had filed consents as of that date, 32 worked for Rocket Mortgage outside of Arizona, including 10 in Michigan, 12 in Ohio, three in Illinois, two in New York, and one in each of the following states: California, Florida, Idaho, Texas, and Wyoming. *See* Exhibit A, Decl. of A. Niemiec, ¶¶16-20. And one of the named Plaintiffs is a Michigan resident and worked for Rocket Mortgage in Michigan. *Id.,* ¶18; ECF No. 26, Am. Compl., Caption ("David Vallejo, a Michigan Resident").

series of nearly identical lawsuits around the country, exponentially increasing the costs of litigation, and creating a high likelihood of piecemeal litigation and inconsistent rulings.

Finally, if the court does not dismiss the claims of non-Arizona plaintiffs or transfer the case under §1631, it should transfer the case to the Eastern District of Michigan under §1404 because Michigan is a more convenient forum and the interests of justice favor transferring this case to Michigan. This is especially so where most putative collective members worked outside of Arizona, Arizona has no connection to the alleged development or implementation of the purported policies at issue, and Michigan is a more convenient venue.

**FACTUAL BACKGROUND**

Rocket Mortgage is a Mortgage Company. (ECF 26, Am. Compl. ¶25.) Its "home state" is Michigan, the state where it is both organized and where it maintains its principal place of business. (See Decl. of A. Neimiec, attached as Ex. A.) Plaintiffs are mortgage bankers formerly employed by Rocket Mortgage. (ECF 26, Am. Compl. ¶¶1, 11, 12, 26-38.) Plaintiffs claim to be salary employees who routinely worked more than 40 hours per week. (*Id.,* ¶¶ 39, 44.) According to Plaintiffs, Rocket Mortgage "failed to properly compensate Plaintiffs for all of their overtime hours worked" and improperly calculated Plaintiffs' regular rate of pay by failing to "properly incorporate the incentives, bonuses, and additional compensation paid to Plaintiffs in each pay period as part of the determination of their regular rate of pay." (*Id.*, ¶¶69-72.)

Plaintiffs seek to pursue claims on behalf of a nationwide collective, defined as:

> All persons who work[ed] for Defendant Rocket Mortgage, LLC or its predecessor entities Quicken Loans, LLC and Quicken Loans, Inc.; who work[ed] over 40 hours in any given workweek as a past or present mortgage banker or similar title, or who performed the job duties of working with barrowers through loan processing (the "Collective Members").

(ECF No. 26, Am. Compl. ¶80.)

Rocket Mortgage employs more than 10,000 people. (Ex. A, ¶ 14.) Of these, only 11.8% are in Arizona. *Id.* By contrast, Rocket Mortgage employs about 68% of its workforce in Michigan. *Id.* Of the mortgage bankers employed by Rocket Mortgage, about 17.4% are in Arizona. (*Id.*, ¶15.) Yet, 56% of the mortgage bankers are in Michigan. *Id.* The remaining mortgage bankers are employed in other states. *Id.* Thus about 82.6% of mortgage bankers employed by Rocket Mortgage reside outside the state of Arizona. *Id.* All of Rocket Mortgage's employment and payroll policies were developed in Michigan. (*Id.*, ¶13.) All human resources and payroll activities are directed from Rocket Mortgage's headquarters in Detroit. (*Id.*, ¶¶7-10,13.) Moreover, all of Rocket Mortgage's business records are in Detroit, as are all the employees who developed and implemented its payroll practices. (*Id.*, ¶¶11-12.) None of Rocket Mortgage's payroll or other employment records related to non-Arizona putative collective members are in Arizona. (*Id.* ¶¶11-13.)

## I. THE COURT SHOULD DISMISS PLAINTIFFS' NATIONWIDE COLLECTIVE ALLEGATIONS FOR WANT OF PERSONAL JURISDICTION UNDER RULE 12(b)(2)

Plaintiffs seek to pursue claims on behalf of a nationwide collective. But under Fed. R. Civ. P. 12(b)(2), the claims asserted on behalf of non-Arizona collective members should be dismissed for lack of personal jurisdiction. Rocket Mortgage is a Michigan company whose principal place of business is in Detroit. (Ex. A, ¶¶4-5, 7.) Thus, Michigan—not Arizona—is Rocket Mortgage's home state. Because Plaintiffs seek to pursue a nationwide collective action outside Rocket Mortgage's home state, the claims of non-Arizona residents should be dismissed.

### A. Standard of Review.

Plaintiff must make a prima facie showing that personal jurisdiction exists. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). To do so, "plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In determining whether Plaintiffs have met their burden, the Court may consider the pleadings, as well

1  as any affidavits or exhibits submitted by the parties. *Doe v. Unocal Corp.*, 248 F.3d
2  915, 922 (9th Cir. 2001).

3  Once a defendant raises the lack of personal jurisdiction, plaintiff has the burden
4  of demonstrating that personal jurisdiction exists. *Menken v. Emm,* 503 F.3d 1050, 1056
5  (9th Cir. 2007). To establish personal jurisdiction over a defendant, a plaintiff must
6  show: (1) that the longarm statute of the forum state confers personal jurisdiction over an
7  out-of-state defendant, and (2) that the exercise of jurisdiction is consistent with federal
8  due process requirements. *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154-55 (9th Cir.
9  2006); *Chan v. Soc'y Expeditions,* 39 F.3d 1398, 1404-05 (9th Cir. 1994); Fed. R. Civ.
10 P. 4(K).

11 The due process inquiry involves two recognized categories of personal
12 jurisdiction: general jurisdiction (or "all-purpose" jurisdiction) and specific jurisdiction
13 (or "case-linked" jurisdiction). *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct.
14 1773, 1779-80 (2017). A court with general jurisdiction may hear any claim against that
15 defendant, even if all the incidents underlying the claim occurred in a different State. *Id.*;
16 *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).
17 Specific jurisdiction, on the other hand, exists when the suit "arise[es] out of or relate[s]
18 to the defendant's contacts with the forum." *Bristol-Myers*, 137 S. Ct. at 1776.
19 "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected
20 with, the very controversy that establishes jurisdiction." *Id.* at 1780.

21 **B.     *Rocket Mortgage is Not Subject to General Jurisdiction in Arizona.***

22 The Supreme Court has narrowed the scope of general jurisdiction by clarifying
23 that there are only a limited set of contacts with a forum that will render a defendant
24 subject to general jurisdiction in that forum. *Daimler AG v. Bauman*, 571 U.S. 117, 137
25 (2014). A corporation's contacts with the forum state must be so continuous and
26 systemic as to render it essentially "at home" in that state. *Id*. The Supreme Court
27 explained that, generally, a corporate entity is at home in its place of incorporation and
28 principal place of business. *Daimler*, 571 U.S. at 137. Merely engaging "in a

4

1  substantial, continuous, and systematic course of business" in a particular jurisdiction is
2  insufficient to permit the exercise of general personal jurisdiction there. *Id.* at 137-38.

3  While a corporation's operations in another forum may be "so substantial and of
4  such a nature as to render the corporation at home in that State," that is true only in the
5  exceptional case. *See id.* at 139, n 19-20 ("A corporation that operates in many places
6  can scarcely be deemed at home in all of them. Otherwise, 'at home' would be
7  synonymous with 'doing business'[.]"); *BNSF R v Tyrrell*,137 S Ct 1549, 1559 (2017)
8  (Montana courts lacked general jurisdiction over a company that was not incorporated in
9  Montana, did not maintain its principal place of business in Montana, and – even though
10 the company had more than 2,000 employees in Montana – it could not be considered
11 "at home" in Montana); *Agher v. Envoy Air*, Inc., CV-19-6753-R, 2018 U.S. Dist.
12 LEXIS 223964, at *4-6 (C.D. Calif. Oct. 12, 2018) (American Airlines was not "at
13 home" in California, and thus not subject to general personal jurisdiction despite
14 allegations that 16% of American's flights involved departures and arrivals in California
15 and about 8,500 American employees were based in California); *White v. Steak N Shake*,
16 No. 4:20 CV 323 CDP, 2020 U.S. Dist. LEXIS 61747, at *6 (E.D. Mo. Apr. 8, 2020)
17 ("Steak N Shake's continuous and systematic operation in Missouri of thirty-nine of its
18 more than 400 national restaurants, with nothing more, make Steak N Shake essentially
19 at home there.").

20 Plaintiffs plead no facts that would render this matter the "exceptional" case
21 where a foreign corporation may be found "at home" in another jurisdiction. As
22 Plaintiffs acknowledge, Rocket Mortgage is a company *authorized* to do business in
23 Arizona. (ECF 26, Am. Compl. ¶14; see also Ex. A, ¶6.) But Rocket Mortgage is not "at
24 home" in Arizona. Instead, it is a Michigan limited liability company whose principal
25 place of business is Detroit, Michigan. (Ex. A, ¶¶4-5, 7.) Because it is not "at home" in
26 Arizona, general jurisdiction is not a basis for personal jurisdiction over Rocket
27 Mortgage for any of Plaintiffs' claims.
28

### C. *Rocket Mortgage is Not Subject to Specific Jurisdiction for Conduct Outside of Arizona.*

Because this Court lacks general jurisdiction over Rocket Mortgage, the scope of Plaintiffs' claims that can proceed here is limited to Rocket Mortgage's alleged conduct in Arizona. This is because specific jurisdiction requires the suit to arise "'out of or relat[e] to the defendant's contacts with the forum.'" *Bristol-Myers,* 137 S. Ct. at 1780 (alterations in original) (quoting *Daimler*, 571 U.S. at 127). For specific personal jurisdiction to exist, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Goodyear,* 564 U. S., at 919). Without activity or occurrence taking place in or connecting the forum to the controversy, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers,* 137 S. Ct. at 1781.

Plaintiffs plead a nationwide collective action. Yet Plaintiffs do not allege the claims of non-Arizona putative collective members arise out of or relate to Rocket Mortgage's Arizona activities. Instead, Plaintiffs allege claims that arise out of Rocket Mortgage's "decision, policy, plan or common program, practices, protocols, routines, and rules"—none of which are alleged to have arisen, been developed, or enforced from Arizona. (ECF 26, Am. Compl., ¶82.) But any such decisions were made in Michigan. (Ex. A ¶10.) Similarly, any injury to non-Arizona residents — alleged failure to properly pay overtime—occurred outside Arizona. (ECF 26, Am. Compl., ¶¶82, 88, 98; see also Ex. A.)

*Bristol-Myers* is instructive. There, a group of plaintiffs both resident and non-residents sued Bristol-Myers Squibb ("BMS") in California based on injuries allegedly caused by a BMS drug. *Bristol-Meyers*, 137 S. Ct. at 1778. The non-resident plaintiffs, however, did not allege that their injuries were connected to BMS's conduct in California, and BMS moved to dismiss those claims for lack of personal jurisdiction. *Id.*

The California Supreme Court held that the court could exercise specific jurisdiction over the non-residents' claims based on a sliding scale approach. *Id.* It reasoned that because BMS had extensive contacts with California, a less direct connection was required. *Id.* at 1779.

But the Supreme Court reversed, rejecting this "lesser connection" analysis and concluding that there was no specific jurisdiction over the non-residents' claims. *Id.* The Court emphasized that there was no link between the claims and California since the non-residents did not take or ingest the drug in California, and they were not injured in California. *Id.* The Court continued that California could not assert specific jurisdiction over the non-residents' claims simply because it could assert jurisdiction over the residents' similar claims. *Id.* at 1781. In so doing, the Court reaffirmed that "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction," even when that third party can bring similar claims. *Id.* (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)).

The holding in *Bristol-Myers* has equal effect here. Here, as in *Bristol-Myers* the potential non-Arizona plaintiffs "are not [Arizona] residents and do not claim to have suffered harm in that State," *Bristol-Myers,.* 137 S. Ct. at 1782, and "all the conduct giving rise to the nonresidents' claims occurred elsewhere." *Id.* Further as in *Bristol-Myers*, "[i]t follows that the [Arizona][] courts cannot claim specific jurisdiction." *Id.* Plaintiffs cannot conjure specific personal jurisdiction over Rocket Mortgage for non-Arizona opt-in plaintiffs by virtue of their own claims or allegations that Rocket Mortgage's employees in other states experienced similar conduct or could bring similar claims.

> **D.    Courts Applying Bristol-Myers in the FLSA Collective Action Context Have Found There is no Personal Jurisdiction over Defendants with Respect to the Claims of Opt-In Plaintiffs Who Did Not Work in the Forum State.**

Since *Bristol-Myers*, courts have dismissed putative FLSA collective claims of employees who could not establish a connection between their claims and the forum

1  state. This includes various federal appellate courts and district courts in the Ninth
2  Circuit.[2] *See e.g.*, *Wilkerson v Walgreens Specialty Pharmacy LLC*, CV-21-01427, 2022
3  U.S. Dist. LEXIS 195903, at *12-13 (D Ariz. Oct. 27, 2022) (noting at least three Ninth
4  Circuit district courts and 27 other district courts have held that *Bristol-Myers* applies to
5  deprive courts of personal jurisdiction over claims by out-of-state plaintiffs
6  in FLSA actions and finding the reasoning of courts applying *Bristol Myers* more
7  persuasive and dismissing the holdings of courts that have reached the oppositve
8  result);[3] *Gonzalez v. Gov't Emples. Ins. Co.,* No. 2:20-cv-11722-RGK-KS, 2021 U.S.
9  Dist. LEXIS 201640, at *7-9 (C.D. Cal. Apr. 30, 2021) ("[T]he Court lacks personal
10 jurisdiction over Rieske's and the out-of-state opt-in Plaintiffs' FLSA claims, and
11 therefore dismisses those claims[.]"); *Kurtz v. Rcch Trios Health*, No. 4:19-CV-5049-
12 RMP, 2021 U.S. Dist. LEXIS 249474, at *15-19 (E.D. Wash. Sep. 17, 2021) (the court
13 lacked personal jurisdiction over defendant over the claims of out-of-state opt-ins
14 "absent a showing of a link between the alleged conduct of th[e] defendant and
15 Washington"); *Carlson v. United Nat. Foods, Inc.,* No. C20-5476-JCC, 2021 U.S. Dist.
16 LEXIS 154079, at *7-11 (W.D. Wash. Aug. 14, 2021) (lack of personal jurisdiction over
17 defendants over the claims of out-of-state FLSA plaintiffs); *McNutt v. Swift Transp. Co.*
18 *of Ariz., LLC*, No. C18-5668 BHS, 2020 U.S. Dist. LEXIS 119909, at *25 (W.D. Wash.
19 July 7, 2020) (court lacks jurisdiction over the claims of employees who did not live or

---

[2] The Ninth Circuit has not addressed the applicability of *Bristol-Myers* to FLSA claims.

[3] *Wilkerson* concluded that personal jurisdiction was also lacking under Fed. R. Civ. P. 4(k) because the Court was only authorized to reach those claims that an Arizona state court would have jurisdiction, and the jurisdiction of Arizona courts is limited by the Due Process Clause, which requires a state court to have personal jurisdiction over each defendant as to every claim by each plaintiff. 2022 U.S. Dist. LEXIS 195903, at *25. Rocket Mortgage, as discussed above, is subject to the general jurisdiction by the courts in the State of Michigan, not Arizona, thereby precluding the Court obtaining personal jurisdiction under Fed. R. Civ. P. 4(k)(1) through service of a summons or waiver. And because Rocket Mortgage is subject to general jurisdiction in Michigan, this Court cannot obtain personal jurisdiction through service of a summons or waiver under Fed. R. Civ. P. 4(k)(2).

work in the forum state); *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 370 (3d Cir. 2022) ("We join the Sixth and Eighth Circuits and hold that. . . every plaintiff who seeks to opt in to the suit must demonstrate his or her claim arises out of or relates to the defendant's minimum contacts with the forum state."); *Vallone v. CJS Sol. Grp.*, LLC, 9 F.4th 861, 865-66 (8th Cir. 2021) (district court lacked personal jurisdiction over FLSA claims by non-residents); *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 397 (6th Cir. 2021) ("[t]he principles animating *Bristol-Myers's* application to mass actions under California law apply with equal force to FLSA collective actions under federal law").[4]

Courts applying *Bristol-Myers* to FLSA cases have acknowledged the structure of an FLSA collective action is analogous to the mass tort action at issue in *Bristol-Myers*. As the Sixth Circuit in *Canaday* aptly stated:

> The principles animating *Bristol-Myers's* application to mass actions under California law apply with equal force to FLSA collective actions under federal law. As other circuits have acknowledged, an FLSA collective action is more accurately described as a kind of mass action, in which aggrieved workers act as a collective of individual plaintiffs with individual cases. A mass action is more akin to an opt-in FLSA collective action than it is to a class action. The key link is party status. In an FLSA collective action, as in the

---

[4] *See also Speight v. Labor Source, LLC,* No. 4:21-CV-112-FL, 2022 U.S. Dist. LEXIS 71218, at *27 (E.D.N.C. Apr. 19, 2022); *Parker v. IAS Logistics DFW*, LLC, No. 20 C 5103, 2021 U.S. Dist. LEXIS 171095, at *8 (N.D. Ill. Sep. 9, 2021); *Ruffing v. Wipro Ltd.*, 529 F. Supp. 3d 359, 368-70 (E.D. Pa. 2021); *Bone v. XTO Energy, Inc.*, 561 F. Supp. 3d 1132, 1137 (D.N.M. 2021); *Butler v. Adient US, LLC*, No. 3:20 CV 2365, 2021 U.S. Dist. LEXIS 126886, at *8 (N.D. Ohio July 8, 2021); *Weirbach v. Cellular Connect., LLC*, 478 F. Supp. 3d 544, 546-52 (E.D. Pa. 2020); *Hodapp v. Regions Bank*, No. 4:18CV1389 HEA, 2020 U.S. Dist. LEXIS 238552, at *4 (E.D. Mo. Dec. 18, 2020); *Fischer v. Fed. Express Corp.*, 509 F. Supp. 3d 275, 284-91 (E.D. Pa. 2020); *Szewcyzyk v. UPS*, No. 19-1109, 2019 U.S. Dist. LEXIS 182998, at *24 (E.D. Pa. Oct. 22, 2019); *Wiggins v. Jedson Eng'g, Inc.*, No. 1:19-CV-00354-DCLC-CHS, 2020 U.S. Dist. LEXIS 225772, at *15 (E.D. Tenn. Aug. 27, 2020); *Hutt v. Greenix Pest Control, LLC*, No. 2:20-cv-1108, 2020 U.S. Dist. LEXIS 220748, at *24 (S.D. Ohio Nov. 24, 2020); *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 851 (N.D. Ohio 2018); *Rafferty v. Denny's, Inc.,* No. 5:18-cv-2409, 2019 U.S. Dist. LEXIS 112727, at *15 (N.D. Ohio July 8, 2019); *Turner v. Utiliquest*, No. 3:18-cv-00294, 2019 U.S. Dist. LEXIS 224202, at *7 (M.D. Tenn. July 16, 2019).

> mass action under California law, each opt-in plaintiff becomes a real party in interest, who must meet her burden for obtaining relief and satisfy the other requirements of party status.

*Canaday*, 9 F.4th at 397 (citations and quotations omitted, emphasis added); *see also Fischer*, 42 F.4th at 376-77 ("[A]n opt-in plaintiff under § 216(b) becomes a 'party plaintiff' . . . [and therefore has] the same status in relation to the claims of the lawsuit as do the named plaintiffs."). One of the requirements of party status is establishing the existence of personal jurisdiction. *Id,* at 387 ("[T]he opt-in plaintiffs in FLSA collective actions must satisfy the personal jurisdiction requirements of the Fourteenth Amendment to join the suit."); *Carlson,* 2021 U.S. Dist. LEXIS 154079, at *9 ("There is 'no doubt that every plaintiff who opts into a collective action has party status,'. . . and therefore must establish personal jurisdiction."). In both mass actions and FLSA collective actions, "[t]he mere fact that [some] plaintiffs were . . . [injured]. . .in [the forum state]—and allegedly sustained the same injuries as did the nonresidents— does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Bristol Myers*, 137 S. Ct. at 1781. "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Id*.  Thus, this Court lacks personal jurisdiction over the claims of any opt-in plaintiff who did not work in Arizona.[5]

---

[5] Plaintiffs may rely on *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 86 (1st Cir. 2022) or district court cases applying similar rationale, to conclude that *Bristol-Myers's* analysis holding does not apply to FLSA collective actions. But they conflict with three federal courts of appeals, which have already held that "[t]he principles animating *Bristol-Myers's* application to mass actions apply with equal force to FLSA collective actions under federal law." *Canaday*, 9 F.4th at 397; *Vallone*, 9 F.4th at 866; *Fischer*, 2022 U.S. App. LEXIS 20536, at *3. And *Waters* conflicts with the growing corpus of decisions in this Circuit, and others, applying *Bristol-Myers* to FLSA collective actions. This Court should adopt the reasoning of the Sixth, Eighth, and Third Circuits and conclude that *Bristol-Meyers's* requires specific personal jurisdiction over a defendant as to claims of opt-in FLSA collective Plaintiffs. *But see Cooley v. Air Methods Corp.*, No. CV-19-00850-PHX-DLR, 2020 U.S. Dist. Lexis 177139, *8-9 (D. Arizona, Sept. 25, 2022) (collecting cases) (stating it would decline to apply *Bristol-Myers* to FLSA collective claims).

Because the Court lacks personal jurisdiction over the claims of any putative opt-in plaintiff who did not allegedly work for Rocket Mortgage in Arizona, such claims should be dismissed under Rule 12(b)(2). Further, Plaintiffs' claims on behalf of out-of-state claimants must be dismissed with prejudice because Plaintiffs cannot plead any fact that would subject Rocket Mortgage to general jurisdiction in Arizona. *Van Dusen v City of Oakland*, 678 F App'x 582, 584 (9th Cir. 2017) (The district court did not abuse its discretion by denying leave to amend because any further amendment would have been futile) (citing *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)). Thus, this Court should dismiss Plaintiffs' claims on behalf of non-Arizona Plaintiffs without leave to amend.

**II.    IF THE COURT DOES NOT DISMISS THE CLAIMS OF NON-ARIZONA DEFENDANTS, THE COURT SHOULD TRANSFER THIS CASE TO THE EASTERN DISTRICT OF MICHIGAN UNDER §1631 OR §1404**

   **A.    Transfer Under Section 1631 or Dismissal under 12(b)(2) is Appropriate.**

If a district court determines that it lacks personal jurisdiction over a defendant, it must dismiss the case or transfer it to any district in which it could have been initially brought. *See Harrell v. Kepreos*, 175 F. App'x 793, 794 (9th Cir. 2006) (affirming district court's decision that it lacked personal jurisdiction over the defendants and remanding with instructions to transfer the case pursuant to 28 U.S.C. § 1631). "For the Court to direct a transfer under § 1631, three conditions must be met: (1) the transferee court would have been able to exercise its jurisdiction on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interest of justice." *Chorost v. Rotor Am. Inc.*, No. CV-21-00235-TUC-RCC (LCK), 2022 U.S. Dist. LEXIS 218451, at *29 (D. Ariz. Aug. 8, 2022) (internal quotations and citation omitted).

A case may be transferred only to a district where it originally "could have been brought;" meaning the transferee court must have subject matter jurisdiction, proper venue, and the defendant must be subject to personal jurisdiction. *Id.*, citing *Helferich Pat. Licensing, LLC v. Suns Legacy Partners, LLC*, No. CV-11-2304-PHX-NVW, 2013

WL 442296, at *1 (D. Ariz. Feb. 5, 2013). "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (internal quotations and citation omitted); *Amity Rubberized Pen Co. v. Mkt. Quest Grp., Inc.*, 793 F.3d 991, 996 (9th Cir. 2015) (same).

Here, transfer to the Eastern District of Michigan is warranted under Section 1631. First, Plaintiffs cannot plausibly dispute that their lawsuit could have been filed in the Eastern District of Michigan. Indeed, Plaintiffs' claims depend on the alleged violation of a federal statute—the FLSA—so the Eastern District of Michigan has federal question subject matter jurisdiction over their claims. (See ECF 26, Am. Compl. ¶4.) As for personal jurisdiction (and as discussed above), Rocket Mortgage's headquarters and principal place of business is in Michigan. Thus, Michigan has general personal jurisdiction over Plaintiffs' individual claims and over the claims of the non-Arizona opt-in plaintiffs and is subject to service of a summons under Fed. R. Civ. P. 12(k). Venue is also proper in the Eastern District of Michigan because Rocket Mortgage is headquartered in Detroit, Michigan, which is in that District. See 28 U.S.C. § 1391. And one of the named Plaintiffs is a Michigan resident who worked for Rocket Mortgage in Michigan, not Arizona. (Ex. A, ¶18).

Second, the interests of justice favor transfer. Transferring saves time and resources and maintains case continuity by simply moving this case to the proper jurisdiction—one that has the authority to hear the claims of the non-Arizona opt-in plaintiffs. Dismissal would only delay the proceedings and require any non-Arizona opt-in plaintiffs to file their claims elsewhere, with no guarantee that they re-file in the Eastern District of Michigan. Dismissal increases the likelihood of the filing a series of nearly identical lawsuits around the country, exponentially increasing the costs of litigation, and creating a high likelihood of piecemeal litigation and inconsistent rulings. Thus, transfer is appropriate under §1631.

### B. Transfer is Also Appropriate under Section 1404.

Even if this Court finds that it has personal jurisdiction over the claims of the non-Arizona opt-in plaintiffs (which it should not), it should still transfer this case to the Eastern District of Michigan under 28 U.S.C. § 1404(a). A district court may transfer a civil action to any other district or division where the case may have originally been brought "for the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). "The purpose of [§ 1404(a)] is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *McCormick v. Franklin Cty. Court of Common Pleas Domestic Div.*, No. CV-19-02941-PHX-DJH, 2019 U.S. Dist. LEXIS 128441, at *6 (D. Ariz. July 31, 2019) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)). Factors courts may consider in deciding to transfer venue include:

> (1) the state that is most familiar with the governing law, (2) the plaintiff's choice of forum, (3) the respective parties' contacts with the forum, (4) the contacts relating to the plaintiff's cause of action in the chosen forum, (5) the differences in the costs of litigation in the two forums, (6) the availability of compulsory process to compel attendance of unwilling, non-party witnesses, and (7) the ease of access to sources of proof.

*McCormick*, 2019 U.S. Dist. LEXIS 128441, at *6 (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000)).

Transfer to the Eastern District of Michigan is appropriate. This case could have been initially brought in the Eastern District of Michigan. It has subject matter jurisdiction over Plaintiffs' claims and personal jurisdiction over Rocket Mortgage as to those claims. Moreover, venue is proper. And the factors identified above, on balance, strongly favor transferring the case. The first factor does not weigh heavily in favor of either party as both the District of Arizona and Eastern District of Michigan are familiar with the FLSA. But as for the second factor, Plaintiffs' choice to sue Rocket Mortgage in Arizona should be given only minimal weight because they seek to represent other

potential plaintiffs from around the country in a collective action. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("Although great weight is generally accorded plaintiff's choice of forum, when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight."); *Cowley v. Prudential Sec.,* No. 1:19-cv-01472-, 2020 U.S. Dist. LEXIS 233628, at *23 (E.D. Cal. Dec. 10, 2020) (concluding "that Plaintiff's choice of forum is entitled to little weight, and it is not entitled to the deference it would receive were it not proceeding as an FLSA collective action"). Plaintiffs also allege that Rocket Mortgage maintained a company-wide unlawful policy and seek to bring a nationwide putative collective action, but few facts about Plaintiffs proposed collective are alleged to have occurred in Arizona, particularly when compared to Rocket Mortgage's operations in the Eastern District of Michigan, where it is headquartered. (See Ex. A, ¶¶ 7-13.) Indeed, less the 11.8% of Rocket Mortgage workforce is in Arizona. By contrast, about 68% of Rocket Mortgage's workforce is in Michigan. (*Id.*, ¶¶14-15.) Moreover, more than 82% of the putative collective worked for Rocket Mortgage outside of Arizona, including one of the named Plaintiffs. *Id.*, ¶¶15,17-20. Plaintiffs do not allege that Rocket Mortgage developed any nationwide policies or processes related to this lawsuit in Arizona or enforced any such policies from Arizona. In short, the primary dispute arises out of Michigan and the various other states in which Rocket Mortgage operates—with only a limited part arising out of Arizona; further justifying giving Plaintiffs' choice of forum only minimal consideration. See *Lou,* 834 F.2d at 739 ("If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration."); *Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 779 (N.D. Cal. 2015) (plaintiffs' choice of forum afforded less deference because the "[p]laintiffs filed. . .purported class actions in a district where very few of the operative facts occurred. . . [and thus] th[e] forum has little local interest in adjudicating [p]laintiffs' claims" when compared to the district where the "[d]efendant is headquartered. . .and conducts a substantial amount of business[.]").

1    Factors three through seven all significantly favor transfer. Michigan is not only
2    where Rocket Mortgage is headquartered and the state with the most potential plaintiffs
3    reside, but it is also centrally located and where most of the documents and witnesses
4    with information about Rocket Mortgage's employment policies and practices will be
5    found. By contrast, Arizona has few putative collective action members, is located on
6    the opposite side of the country from employees working on the east coast, and is not
7    where Rocket Mortgage's company witnesses, or documents are located. Thus, the
8    Eastern District of Michigan is a far more convenient venue. See, e.g., *Baird*, 2022 U.S.
9    Dist. LEXIS 42293, at *14 ("[B]ecause neither the non-Plaintiffs nor Defendants are
10   based in this district or even in California, access to the evidence would be easier in the
11   Southern District of Texas because that is where [the defendant] is based. Accordingly,
12   this factor weighs in favor of transfer."); *Cowley*, 2020 U.S. Dist. LEXIS 233628, at
13   *13-17 (convenience of the parties and witnesses favor transfer to the Eastern District of
14   Michigan because a majority of the potential witnesses are in Michigan and "there is no
15   real dispute that the majority of the putative FLSA class members reside and work in
16   Michigan," which suggests that "Michigan would be a more convenient forum for
17   them"). Accordingly, if this Court declines to dismiss this case as to non-Arizona
18   putative collective members, it should transfer the case to the Eastern District of
19   Michigan.

## CONCLUSION

This Court should dismiss the claims of non-Arizona putative class members for lack of personal jurisdiction. If the Court declines to do so, it should transfer this case to the Eastern District of Michigan under either 28 U.S.C. §1631 or §1404.

## LRCiv 12.1(c) CERTIFICATION

The undersigned counsel certifies that, prior to filing of this Motion, counsel for Plaintiffs and Defendant discussed the deficiencies by telephone conference and email. The parties were unable to agree, and Plaintiffs declined to amend the complaint to address the issues raised in this Motion.

15

DATED March 3, 2023

JACKSON LEWIS P.C.

By: /s/ *J. Greg Coulter*
　　J. Greg Coulter
　　Allan S. Rubin
　　Attorney for Defendant
　　Rocket Mortgage, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

James Weiler, AZ Bar No. 034371
**WEILER LAW PLLC**
5050 N. 40th St., Suite 260
Phoenix, AZ 85018
jweiler@weilerlaw.com
Attorneys for Plaintiffs

By: /s/ *Amalia Tafoya*

4895-0018-5940, v. 1

17