**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rachael Gilburd, et al., | No. CV-23-00010-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Rocket Mortgage LLC, | |
| Defendant. | |

This is a collective action arising out of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* Plaintiffs Rachael Gilburd, Andrew Gebhart, Daniel Featherstone, Derek Martin, Angela McGuire, Kori Morin, Katherine Redas, Erin Salava, David Vallejo, and Nick Vincent (collectively "Plaintiffs"), on behalf of themselves all other persons similarly situated, accuse Defendant Rocket Mortgage, LLC of failing to pay overtime wages pursuant to § 207 of the FLSA. Pending before the Court are three motions, which the Court will take together: (1) Defendant's motion for judgment on the pleadings under Federal Rule of Evidence 12(c); (2) Defendant's motion to dismiss under Federal Rule of Evidence 12(b)(2) or transfer venue under 28 U.S.C. § 1631 or § 1404; and (3) Plaintiffs' motion for conditional class certification under 29 U.S.C. § 216(b).[1] The motions are all fully briefed. (*See* Docs. 30, 38, 47, 52, 53, 54, 56, 59, 61.) For the following reasons, the

---

[1] Defendant's request for oral argument is denied because the issues are adequately briefed, and oral argument will not assist the Court in reaching its decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

Court denies Defendant's motion for judgment on the pleadings under Rule 12(c), denies Defendant's motion to dismiss under Rule 12(b)(2) or transfer venue, and grants in part Plaintiffs' motion for conditional class certification.

## I.     BACKGROUND

### A. Fair Labor Standards Act

Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). The FLSA requires employers, in part, to pay non-exempt workers at one and a half times the regular rate for any time worked in excess of forty hours in a single week. 29 U.S.C. § 207; *Alonzo v. Akal Sec., Inc.*, No. CV-17-00836-PHX-JJT, 2017 WL 5598227, at *1 (D. Ariz. Nov. 21, 2017). Workers can jointly sue their employer for unpaid overtime compensation through a "collective action." 29 U.S.C. § 216(b). "The collective action allows a representative plaintiff to bring suit on behalf of workers who are 'similarly situated', and thereby serves to (1) reduce the burden on plaintiffs through the pooling of resources, and (2) make efficient use of judicial resources by resolving common issues of law and fact together." 29 U.S.C. § 216(b); *Alonzo*, 2017 WL 5598227, at *1 (internal citation omitted).

### B. Factual and Procedural Background

On February 10, 2023, Plaintiffs, on behalf of themselves and all other similarly situated individuals, filed their First Amended Complaint ("FAC") alleging that Defendant willfully failed to pay all owed overtime wages in accordance with 29 U.S.C. § 207. According to the FAC, Defendant is a mortgage company that is incorporated and maintains a principal place of business in Michigan but operates nationwide. (Doc. 26 ¶ 25.) Plaintiffs are former licensed mortgage loan officers employed by Defendant within the last three years.[2] (*Id.* ¶¶ 1, 11, 26–38) Plaintiffs' primary job duties were the origination of residential mortgages. (*Id.* ¶ 38.) Plaintiffs allege that they routinely worked in excess

---

[2] From approximately April 2020 through July 2021, Plaintiffs were employed by Defendant under the business name, Quicken Loans, LLC. In July 2021, Quicken Loans changed its named to Rocket Mortgage, LLC. (Doc. 26 ¶ 26.)

of forty hours per week, but that Defendant failed to compensate Plaintiffs for all overtime hours worked, improperly calculated Plaintiffs' overtime pay, and failed to pay Plaintiffs overtime at a rate of one and a half times Plaintiffs' regular rate of pay. (*Id.* ¶¶ 67–72.) Plaintiffs propose a collective class for their FLSA claim as follows:

> All persons who work[ed] for Defendant Rocket Mortgage, LLC or its predecessor entities Quicken Loans, LLC and Quicken Loans, Inc.; who work[ed] over [forty] hours in any given workweek as a past or present mortgage banker or similar title, or who performed the job duties of working with borrowers through loan processing (the "Collective Members").

(*Id.* ¶ 80.) Since Plaintiffs' filing of their FAC, more than ninety individuals have filed opt-in consent forms. (*See e.g.*, Docs. 10–19, 22–25, 27–29, 33–37.)

Three motions are pending before this Court. First, Defendant has filed a motion for judgment on the pleadings under Federal Rule of Evidence 12(c). Defendant has also filed a motion to dismiss under Federal Rule of Evidence 12(b)(2) or transfer venue under either 28 U.S.C. § 1631 or 28 U.S.C. § 1404(a). And last, Plaintiffs have filed a motion for conditional class certification. The Court addresses each motion in turn.

## II.   DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Legal Standard

A motion for judgment on the pleadings pursuant to Rule 12(c) is reviewed under the same standard applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980). In ruling on a Rule 12(c) motion, the Court must "accept all material allegations in the complaint as true and construe them in the light most favorable to the [non-moving party]." *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004). The Court must then consider whether the well-pleaded factual allegations, taken as true, plausibly entitle Plaintiffs to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim for relief is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (citing *Iqbal*, 556 U.S. at 678). However, "where a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 67. In such a situation, "the complaint should be dismissed, or judgment granted on the pleadings." *Strigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005).

### B. Analysis

Defendant argues that it is entitled to judgment as a matter of law because Plaintiffs' FAC (Doc. 26) lacks sufficient factual allegations of Defendant's FLSA overtime violations since Plaintiffs fail to allege a "single workweek [in which] they worked more than [forty] hours but were not paid overtime." (Doc. 53 at 8.) The Court disagrees and finds that Plaintiffs have fulfilled their Rule 8 pleading obligations.

Relying on the Ninth Circuit's holding in *Landers v. Quality Communications, Inc.*, Defendant argues that to bring a plausible FLSA claim for unpaid overtime wages, Plaintiffs must allege that they "worked more than forty hours in a *given workweek* without being compensated for the overtime hours worked during that workweek." 771 F.3d at 644–45 (emphasis added). Not so. As the Ninth Circuit explains in *Landers*,

> [T]he plausibility of a claim is "context-specific." A plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or *any other facts that will permit the court to find plausibility.* . . . [W]e decline to make the approximation of overtime hours the *sine qua non* of plausibility for claims brought under the FLSA. After all, most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in control of the defendants.

*Id.* (internal citation omitted) (emphasis added). The Court is not persuaded that, as an inflexible rule, Plaintiffs must identify an exact calendar week of unpaid overtime to plead a plausible claim under the FLSA. *See Varsam v. Lab'y Corp. of Am.*, 120 F. Supp. 3d 1173, 1178 (S.D. Cal. 2015) ("Other courts have agreed that plaintiffs need not plead particular instances of unpaid overtime before being allowed to proceed to discovery."); *see also Turner v. LTF Club Mgmt. Co., LLC*, No. 2:20-cv-00046-KJM-JDP, 2022 WL 1018498, at *3 (E.D. Cal. Apr. 5, 2022) ("[T]here is no indication the *Landers* court sought

to create a 'heightened pleading standard' for FLSA claims."). Indeed, the year after deciding *Landers*, the Ninth Circuit found in *Boon v. Canon Business Solutions, Inc.*, that allegations that "identified tasks for which [plaintiff] was not paid and . . . that [plaintiff] regularly worked more than eight hours in a day and forty hours in a week" were sufficient to state an overtime claim. 592 Fed. App'x 631, 632 (9th Cir. Feb. 18, 2015). To satisfy federal pleading standards, plaintiffs only need to allege sufficient facts to give rise to a plausible inference of a FLSA violation. *See Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1008 (N.D. Cal. 2016). Plaintiffs have done so here.

Like the plaintiffs in *Boon*, Plaintiffs in this case identified tasks for which they were not paid. Plaintiffs alleged that they were "required to be on call 24/7, seven days a week" and that they were instructed by their supervisors, managers, and directors "to promptly respond to emails and telephone calls on weeknights and weekends." (Doc. 26 ¶¶ 63–67.) If Plaintiffs failed to promptly respond to those emails or calls after normal work hours during the week and on weekends, Plaintiffs could be subjected to discipline and termination. (*Id.* ¶ 65.) Defendant's management instructed Plaintiffs to refrain from engaging in activities that would prevent them from being able to promptly respond to emails and calls on weeknights and weekends. (*Id.* ¶ 66.) Plaintiffs further allege they routinely worked more than forty hours per week. (*Id.* ¶ 44.) Although "Defendant was aware that Plaintiffs were responding to emails and taking telephone calls on weeknights and weekends," Plaintiffs went uncompensated for that time spent working. (*Id.* ¶ 44, 65–67.) Additionally, Plaintiffs allege that in 2020 and 2021, they were paid a so-called "Salary Adjust" for some overtime hours worked, but the hourly rate at which Plaintiffs were paid "Salary Adjust" was less than the hourly rate for their non-overtime hours. (*Id.* ¶¶ 50–51.) These are all examples of factual allegations that meet the Rule 8 threshold and allow the Court to draw a reasonable inference that Plaintiffs' FLSA overtime claims are plausible.

Defendant goes on to argue that it is entitled to judgment on the question of willfulness—that Plaintiffs fail to plead sufficient factual allegations supporting their claim that Defendant acted willfully in denying them overtime pay. (Doc. 53. at 15–16.) Again,

the Court disagrees. "At the pleading stage, a plaintiff need not allege willfulness with specificity." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 903 (9th Cir. 2013). Federal Rule of Civil Procedure 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Here, Plaintiffs alleged "Defendant intentionally failed and/or refused to pay Plaintiffs and the Collective Members all owed overtime" and that "Defendant knew that—or acted with reckless disregard as to whether—their refusal or failure to properly compensate Plaintiffs and the Collective Members over the course of their employment would violate federal law, and Defendant was aware of the FLSA overtime requirement." Plaintiffs have sufficiently alleged willfulness. *See e.g.*, *Villapando v. Banamex USA Bancorp*, No. LA CV19-05149 JAK, 2020 WL 1942783, at *3–4, (C.D. Cal. Apr. 21, 2020) (finding allegation that defendants knew federal law required overtime pay and that defendants knowingly, willfully, or in reckless disregard carried out their illegal practice to be sufficient to state a claim for willful FLSA violations); *Pellegrini v. Huyssen, Inc.*, No. 3:17-cv-00135-CAB, 2017 WL 2908794, at *9 (S.D. Cal. July 7, 2017). Accordingly, the Court denies Defendant's motion for judgment on the pleadings.

**III.    DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(B)(2) OR TRANSFER VENUE**

Defendant moves to dismiss the claims of non-Arizona class members[3] and putative class members for lack of personal jurisdiction pursuant to Rule 12(b)(2). In the alternative, Defendant requests the case be transferred to the Eastern District of Michigan either under 28 U.S.C. § 1631 or 28 U.S.C. § 1404(a). And last, if the Court declines to either dismiss or transfer, Defendant requests the Court certify the jurisdictional question to the Ninth Circuit under 28 U.S.C. § 1292. For the following reasons, the Court denies Defendant's motion.

---

[3] As of February 27, 2023, fifty-nine individuals had filed consent to join Plaintiffs' collective class in this action. (Doc. 30-1 at 4.) Of these individuals, at least ten of them worked for Defendant outside of Arizona. (*Id.* at 5.) Defendant asserts that only 17.4% of mortgage bankers employed by Defendant are employed in Arizona. (*Id.* at 4.)

- 6 -

### A. Rule 12(b)(2) Dismissal

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss claims against it for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Plaintiffs bear the burden of establishing the Court's personal jurisdiction over Defendant. *See Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). In resolving a Rule 12(b)(2) motion, the Court may consider evidence outside the pleadings, including affidavits and other materials submitted on the motion. *Daimler AG v. Bauman*, 571 U.S. 117, 123 (2014). "Where, as here, a defendant's motion to dismiss is based on a written record and no evidentiary hearing is held, the plaintiff need only make a prima facie showing of jurisdictional facts." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler*, 571 U.S. at 125. Arizona's long-arm statute allows Arizona courts to exercise personal jurisdiction to the maximum extent permitted under the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a). Due process requires that Defendant "have certain minimum contacts" with the forum state, here Arizona, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations and citation omitted). "Depending on the strength of those contacts, there are two forms that personal jurisdiction may take: general and specific." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).

As an initial matter, the Court finds that it lacks general jurisdiction over Defendant. General jurisdiction requires "affiliations so continuous and systematic as to render the foreign corporation essentially at home" in the forum state. *Daimler*, 571 U.S. at 13 n.11. "Only in an 'exceptional case' will general jurisdiction be available" somewhere other than a defendant-corporation's "place of incorporation and principal place of business." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014). A court with general jurisdiction over a defendant "may hear *any* claim against that defendant, even if all

incidents underlying the claim occurred in a different [s]tate." *Bristol-Myers Squibb Co. v. Superior Ct. of California*, 582 U.S. 255, 262 (2017). Here, Defendant is incorporated and has a principal place of business in Michigan. (Doc. 30-1 at 2.) Plaintiffs fail to make any showing that this is an exceptional case permitting general personal jurisdiction over Defendant. Although Defendant engages in business in Arizona, there is no evidence before this Court that Defendant's affiliations with the state are so continuous and systematic as to render it at home.

The Court does, however, have specific personal jurisdiction over Defendant. For a court to have specific jurisdiction, "the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers*, 582 U.S. at 262 (cleaned up). Defendant does not dispute the Court's specific personal jurisdiction over it with respect to the claims of any Arizona Plaintiffs and class members. Rather, Defendant contends that jurisdiction is lacking with respect to the claims of any non-Arizona employee class members, relying on the Supreme Court's holding in *Bristol-Myers*. *Id.* at 265. There, in applying the Fourth Amendment Due Process Clause to a mass-tort action, the Supreme Court held that California courts lacked personal jurisdiction over the defendant—incorporated and headquartered outside of California—with respect to claims by non-California plaintiffs. *Id.* The Court reasoned that there was no link between the non-residents' tort claims and California since the non-residents neither acquired the defendant's drug, ingested the drug, nor were injured by the drug in California. *Id.* Extending *Bristol-Myers* to this case, Defendant contends that the claims of non-Arizona class members—both putative and those that have consented—are claims that stem from Defendant's non-Arizona activities since these class members neither worked nor were allegedly injured in Arizona. (Doc. 30 at 11.)

In the years since *Bristol-Myers*, however, district and circuit courts have split on whether *Bristol-Myers* applies to FLSA collective action claims. *Gillespie v. Cracker Barrel Old Country Store Inc.*, No. CV-21-00940-PHX-DJH, 2023 WL 2734459, at *12 (D. Ariz. Mar. 31, 2023). At present, the Ninth Circuit has not addressed the issue.

Although some district courts within the Ninth Circuit have dismissed FLSA claims of employees who cannot establish a connection between their claims and the forum,[4] most have rejected applying *Bristol-Myers* to collective actions arising under the FLSA. *See Gillespie*, 2023 WL 2734459, at *12 n.3 ("[F]our Ninth Circuit district courts have applied *Bristol-Myers* to FLSA collective actions while at least seven have held the opposite."). The courts, including this one, that decline to apply *Bristol-Myers* to FLSA cases reason that unlike in *Bristol-Myers*, which involved a products liability claim, FLSA claims involve a "federal claim specifically created by Congress to address employment practices nationwide" and that applying *Bristol-Myers* to such claims would thwart congressional intent. *See Cooley v. Air Methods Corp.*, No. CV-19-00850-PHX-DLR, 2020 WL 9311858, at *3 (D. Ariz. Sept. 25, 2020); *Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017) (holding that applying *Bristol-Myers* to FLSA claims "would splinter most nationwide collective actions" and "greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights"). Following the majority of district courts within this Circuit, the Court finds that *Bristol-Myers* does not divest it of personal jurisdiction in FLSA collective actions. Because Defendant is subject to personal jurisdiction in Arizona for the claims brought by the nine named Arizona Plaintiffs, personal jurisdiction is satisfied. Accordingly, the Court denies Defendant's motion to dismiss Plaintiffs' claims brought on behalf of non-Arizona class members.

**B. Transfer under 28 U.S.C. § 1631 or § 1404**

In the alternative, Defendant requests the case be transferred to the Eastern District of Michigan under either 28 U.S.C. § 1631 or §1404(a). A court may transfer a case under § 1631 "to cure want of jurisdiction." As discussed above, the Court finds that personal jurisdiction is not lacking. Accordingly, a § 1631 transfer is inappropriate. Section 1404(a),

---

[4] *See e.g.*, *Wilkerson v. Walgreens Specialty Pharmacy LLC*, 637 F. Supp. 3d 718, 725–31 (D. Ariz. 2022) (holding that the court lacks specific jurisdiction over non-resident opt-in class members' FLSA claims unrelated to defendants' alleged conduct in the forum); *Kurtz v. Regional Care Hosp. Partners, Inc.*, No. 4:19-CV-5049-RMP, 2021 WL 6246619, at *6 (E.D. Wash. Sept. 9, 2021).

however, provides that a court may transfer a case to any other district where it might have been brought for the "convenience of the parties and witnesses, in the interest of justice." The parties to do not dispute that this case could have been brought in the Eastern District of Michigan, where Defendant is incorporated and has a principal place of business. As such, the Court must determine whether transfer is warranted for the convenience of the parties and witnesses and in the interest of justice.

The Court has discretion in granting § 1404(a) transfers and may do so on an "individualized, case-by-case consideration." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The Ninth Circuit has provided a non-exhaustive list of factors a court may consider when adjudicating motions for transfer, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 499. The Defendant bears the burden of showing that a transfer is warranted. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

After carefully considering the relevant factors, the Court finds that Defendant has not met its burden. Defendant asserts that Michigan is the more convenient place for the action to proceed because that is where Defendant is headquartered, where most potential plaintiffs reside,[5] and where most of the documents and witnesses with information about Defendant's employment practices will be found. (Doc. 30 at 14–15.) First, the Court does not find the location of most of Defendant's current workforce to be persuasive given that nine of the ten named Plaintiffs are Arizona residents and a considerable proportion of individuals who have filed consent in this case worked for Defendant in Arizona.[6]

---

[5] In its brief, Defendant asserts that "about 68% of [its] workforce is in Michigan," citing to an affidavit by Austin Niemiec, Defendant's Chief Revenue Office. (Doc. 30 at 14; Doc 31-1.)

[6] According to Niemiec's affidavit, at least twenty-eight of the fifty-nine individuals who had filed consent as of February 27, 2023, worked for Defendant in Arizona. (Doc.

Moreover, a plaintiff's choice of forum is ordinarily granted great weight and "will almost always weigh against a transfer of venue." *See Fed. Savings Bank v. Wesco Insurance Co.*, No. CV-21-01857-PHX-DLR, 2022 WL 4612548, at *2 (D. Ariz. Sept. 30, 2022). Second, the fact that Michigan is a more convenient place for Defendant to litigate because its documents and witnesses—whom Defendant does not identify with any specificity—are located there is not sufficient to justify transfer when a transfer would merely shift the inconvenience from Defendant to Plaintiffs. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (holding that transfer is inappropriate under § 1404(a) if it "would merely shift rather than eliminate the inconvenience"); *Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1215–16 (S.D. Cal. 2013 ) (weighing the "convenience of witnesses" factor as neutral because defendants failed to identify any potential witnesses by name or describe their testimony).

The Court acknowledges that it is more burdensome for Defendant to litigate in Arizona than in Michigan. Nevertheless, "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004). Furthermore, "given the growth of electronic communication and document production, discovery costs should be about the same in either forum." *OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1009 (D. Ariz. 2017). The Court finds that Defendant has not met its burden and that transfer under § 1404(a) is not warranted. Defendant's motion is denied.

### C. Interlocutory Appeal under 28 U.S.C. § 1292(b)

As a final resort, Defendant requests that the Court certify the jurisdictional question to the Ninth Circuit under 28 U.S.C. § 1292(b). The Ninth Circuit has noted that "§ 1292(b) is to be applied sparingly and only in exceptional cases." *United States v. Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959). Specifically, certification under § 1292 is intended to be used only in those few situations "in which allowing an interlocutory appeal would

---

31-1 at 4.)

- 11 -

avoid protracted and expensive litigation." *Villarreal v. Caremark LLC*, 85 F. Supp. 3d 1063, 1067 (D. Ariz. 2015). The decision to certify "is committed to the sound discretion of the district court." *Id.* at 1068. The party seeking certification has the burden of showing that exceptional circumstances justify departing from the "basic policy of postponing appellate review until after the entry of a final judgment." *Id.* at 1067. Defendant fails to meet this burden. Notably, Defendant requests § 1292(b) certification for the first time in the last few lines of its reply brief. (Doc. 54 at 9.) Defendant does not present any arguments on how an interlocutory appeal could speedily terminate the litigation. Indeed, it is clear that even if the Court were to certify the jurisdictional issue as to the claims of non-Arizona class members, Defendant would still be subject to the Arizona Plaintiffs' claims. The Court finds that certification would not materially advance the termination of this litigation, but merely delay its progress. The Court denies Defendant's request to certify the jurisdictional question under 28 U.S.C. § 1292(b).

**IV. PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION**

Pursuant to § 216(b) of the FLSA, Plaintiffs move to conditionally certify the following putative class:

> All persons who work[ed] for Defendant Rocket Mortgage, LLC or its predecessor entities Quicken Loans, LLC and Quicken Loans, Inc.; who work[ed] over [forty] hours in any given workweek as a past or present mortgage banker or similar title, or who performed the job duties of working with borrowers through loan processing.

(Doc. 26 ¶ 80.) Additionally, Plaintiffs submit to the Court for approval: a proposed judicial notice; a plan for notifying putative class members of their right to opt-in; a time period for putative class members to opt-in; and a plan for Defendant's disclosure of names and contact information for putative class members. For the reasons explained below, the Court grants, in part, Plaintiffs' motion for conditional class certification.

**A. "Similarly Situated" Class**

Plaintiffs filed their FAC "on behalf of themselves and all other similarly situated

individuals pursuant to 29 U.S.C. § 216(b)." (Doc. 26 ¶ 79.) Section 216(b) provides that a collective action to recover damages for an employer's violation of the FLSA may be brought "by any one or more employees for and in behalf of himself or themselves and other employees *similarly situated*." 29 U.S.C. § 216(b) (emphasis added). The FLSA does not define "similarly situated," so the Ninth Circuit employs a two-step approach to collective action certification: preliminary certification and decertification. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018). At the preliminary certification step, the Court determines whether the defined collective is "similarly situated."

> At this first stage, the [C]ourt requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan. If a plaintiff can survive this hurdle, the district court will conditionally certify the proposed class and the lawsuit will proceed to a period of notification, which will permit the potential class members to opt-into the lawsuit. Once the notification period ends, the Court moves on to the second step of the certification process. At the second step, in response to a motion to decertify the class filed by the defendant, the court makes yet another determination whether the proposed class members are similarly situated; this time, however, the court utilizes a much stricter standard to scrutinize the nature of the claims.

*Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010) (cleaned up). Plaintiffs' burden at the preliminary certification stage is "light." *Id.* Plaintiffs' allegations need not be strong nor conclusive. *Id.* at 926. Rather, Plaintiffs merely need to show "that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Wertheim v. Arizona*, No. CIV 92-453-PHX-RCB, 1993 WL 603552, at *1 (D. Ariz. Sept. 30, 1993). Further, Plaintiffs need only show that their positions are similar, not identical, to the putative class members. *Scales v. Info. Strategy Design Inc.*, 356 F. Supp. 3d 881, 885 (D. Ariz. 2018). "In order words, the [C]ourt must only be satisfied that a reasonable basis exists for the [P]laintiffs' claims or class wide injury." *Id.* at 885–86 (internal quotation and citation omitted). Given this

lenient standard, "motions to conditionally certify a class for notification purposes are typically granted." *Colson*, 687 F. Supp. 2d at 925.

"Determining whether a collective action is appropriate is within the discretion of the district court." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). "The [C]ourt's determination at this first step is based primarily on the pleadings and any affidavits submitted by the parties." *Kesley v. Ent. U.S.A. Inc.*, 67 F. Supp. 3d 1061, 1065 (D. Ariz. 2014) (internal quotations omitted). "Courts recognize that collective action notification normally occurs before the Parties have had a chance to engage in extensive fact discovery," which is why courts, in reviewing a motion to conditionally certify, should neither review the underlying merits of the action nor resolve factual disputes. *Colson*, 687 F. Supp. 2d at 926.

Applying this lenient standard to the case at bar, the Court finds that conditional certification is appropriate here. Plaintiffs provide eighteen declarations of opted-in class members. (*See* Doc. 38-1.) These declarations, combined with Plaintiffs' pleadings, reflect that the ten named Plaintiffs and members of the putative class: (1) are or were all employed by Defendant or its predecessors as a "mortgage loan banker," or a similar title, with the primary duty of originating mortgage loans; (2) all regularly and consistently worked more than forty hours in a given work week without proper overtime pay; and (3) all were paid under a scheme in which on any given pay stub the line items were labeled as Salary, Overtime, Salary Adjust, Salary Adjust OT, and Retro OT. (Doc. 26; Doc. 38-1.) The declarations also reflect that the class members were compensated in the same manner and that they never received documentation from Defendant clearly explaining how line items on their pay stubs were calculated. (*Id.*) Plaintiffs' pleadings and declarations contain sufficient allegations supporting their contention that all mortgage bankers currently or previously employed by Defendant were subject to a uniform policy or plan that involved uncompensated overtime work. *See e.g.*, *Leuthold*, 224 F.R.D. at 468 (granting conditional certification where plaintiffs submitted affidavits describing the same job duties, asserting that they worked more than forty hours per week without overtime pay, and claiming that

their experiences were common to the whole class); *Fernandez v. Bank of Am., N.A.*, No. CV 17-6104-MWF, 2019 WL 3059150, at *3 (C.D. Cal. Mar. 8, 2019) (granting conditional certification based on evidence showing that defendant's "lending officers were subject to a uniform compensation plan" and "had similar jobs with similar functions").

Defendant contends that it lawfully compensated Plaintiffs, but as explained, it is not the Court's role at this stage of the litigation to decide the merits of Plaintiffs' case. Defendants also contend that bankers who worked in Alaska, California, Nevada, New Mexico, and Pennsylvania are unlike the named Plaintiffs because whereas Plaintiffs were paid on a salary basis, bankers who worked in these states were paid on an hourly basis. Defendant submits its own declarations to support this contention. Yet again, it is not the Court's role to resolve factual disputes at this time. Furthermore, "the question at this stage is not whose evidence regarding commonality is more believable, but simply whether plaintiffs have made an adequate threshold showing that there are substantially similar putative class members." *Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014 WL 587135, at *12 (N.D. Cal. Feb. 13, 2014) (cleaned up). Plaintiffs have met their burden and so the Court will conditionally certify the present matter as a collective action under the FLSA for notice purposes.

### B. Statute of Limitations

An FLSA claim for unpaid overtime compensation must "be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Plaintiffs allege that Defendant's failure to pay overtime compensation was willful. (Doc. 26 ¶ 99.) Given this case is in its early stages of litigation, the Court will provisionally certify Plaintiffs' collective action for a period of three years prior to the filing of Plaintiffs' FAC, pending discovery. 29 U.S.C. § 255(a); *Kesley*, 67 F. Supp. 3d at 1073 ("Absent discovery, the Court cannot determine whether [plaintiffs'] allegation [of willfulness] is accurate. Therefore, [p]laintiffs' collective action will be provisionally

certified for a period of three years prior to the filing of [plaintiff's complaint]."). For any putative class member—that is any individual who has yet to opt-in—the limitations period will be three years immediately preceding the date on which they file their consent forms. 29 U.S.C. § 256(b); *Kesley*, 67 F. Supp. 3d at 1073.

### C. Notice Form and Method

Defendant raises concerns it has with Plaintiffs' proposed notice and notice process, and requests fourteen days to submit supplemental briefing. (Doc. 52 at 17.) The Court orders the parties to meet and confer to discuss the content of the notice form and the notice process. Within fourteen days of this order, the parties are to submit to this Court either a joint notice form and agreement on the notice method, the opt-in period, and Defendant's production of potential class members' names and last known addresses or, if the parties cannot agree, supplemental briefs, limited to ten pages each, discussing their respective positions.

**IT IS ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 53) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss or Transfer Venue (Doc. 30) is **DENIED**. The Court also denies Defendant's request for certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Conditional Certification (Doc. 38) is **GRANTED** in part as follows:

1. The Court conditionally certifies Plaintiffs' collective action for a period of three years prior to the filing of Plaintiffs' First Amended Complaint (Doc. 26).
2. After the parties have met and conferred, they are **ORDERED** to submit, within fourteen days of this order, either a joint notice form and agreement on the notice method, the opt-in period, and Defendant's production of class members' names and last known addresses or, if the parties cannot agree,

supplemental briefs, limited to ten pages each, discussing their respective positions.

Dated this 6th day of December, 2023.

*Douglas L. Rayes*
United States District Judge